**Ching Shui ZHEN, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 99–71331.

I & NS No. A76–279–361.

United States Court of Appeals, Ninth Circuit.

Submitted March 16, 2001 *.

Decided March 30, 2001.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Before MAGILL,[**] FERNANDEZ, and KLEINFELD, Circuit Judges.

### MEMORANDUM [***]

Zhen Ching Shui, a native of China, petitions for review of the decision of the Board of Immigration Appeals (BIA) ordering him deported to China. In his petition for review, Zhen challenges the immigration judge's decision to deny his request for a continuance of his asylum hearing. We have jurisdiction pursuant to 8 U.S.C. § 1252 and grant the petition for review.

### I.

Zhen Ching Shui, a Chinese citizen, was born in Fujian, China on July 2, 1981. As a teenager, Zhen had an altercation with agents of China's Birth Planning Department, who then told his parents that Zhen would be sterilized at age twenty. Zhen's parents, fearful for his safety, put him on a boat to Guam, where Zhen's uncle resided.

On September 16, 1998, Zhen was apprehended while attempting to enter the United States near Agana, Guam. Zhen did not possess a valid entry document, so the Immigration and Naturalization Service (INS) took him into custody. Since Zhen was an unaccompanied juvenile, and because Guam does not have a detention facility for juveniles, the INS transferred Zhen to the Southwest Key Juvenile Shelter in Arizona. On September 21, 1998, the INS served Zhen with a Notice to Appear, charging that he was subject to removal from the United States under 8 U.S.C. § 1182(a)(7)(A)(i), because he sought admission without a valid entry document, and under 8 U.S.C. § 1182(a)(4)(A), because he was likely to become a public charge.

On October 19, 1998, Roland Fairfield, counsel retained by Zhen's relatives in Guam, entered an appearance in the removal proceedings on Zhen's behalf. On October 21, 1998, the INS served Zhen with a notice that a hearing had been scheduled in his case on November 20, 1998. On November 20, the immigration judge attempted to reach Fairfield at his office, rather than at his home as had been arranged. As the hearing took place at 2:00 a.m. on November 21 in Guam, Fairfield was not at the office, and the immigration judge continued Zhen's case until December 18, 1998.

Prior to the December 18 hearing, Fairfield filed a Motion for Change of Venue, seeking to have Zhen's removal proceedings changed from Phoenix, Arizona to Guam. On December 18, the immigration judge denied Zhen's motion, stating that as long as Zhen was detained in Phoenix, he could not grant a change of venue. The immigration judge then dismissed the charge under 8 U.S.C. § 1182(a)(4)(A), finding that Zhen was not likely to become a public charge, but upheld the charge under 8 U.S.C. § 1182(a)(7)(A)(i)(I), finding Zhen removable.

Zhen then requested relief from removal in the form of asylum. The immigration judge scheduled a hearing for submission of Zhen's asylum application on January 22, 1999, advising Fairfield that he could appear via telephone from Guam. The im-

[**] Honorable Frank Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

[***] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

migration judge emphasized that the asylum application would be due at the January 22 hearing, and explained various ways in which Fairfield could timely submit the application.

After the December 18, 1998 hearing, Fairfield diligently attempted to obtain Zhen's release from custody, contacting numerous INS officials. As a result, Fairfield was not prepared to file the asylum application at the hearing on January 22, 1999. At the hearing, Fairfield requested additional time to prepare the application, but the immigration judge denied the request. The immigration judge then found that by failing to submit the application, Zhen had abandoned asylum as a form of relief, and ordered Zhen removed to China. Despite the immigration judge's denial of his request for additional time to submit the application, Fairfield prepared the application and attempted to submit it on February 18, 1999.

Zhen appealed to the BIA, which dismissed his appeal on September 16, 1999, over the dissent of BIA Chairman Schmidt. Chairman Schmidt suggested that though Fairfield's failure to file the asylum application was unjustified, in the interest of fundamental fairness, Zhen should not be removed without a final attempt to hear his asylum claim. Zhen now appeals the decision of the BIA.

II.

Where the BIA has conducted a de novo review of the immigration judge's decision, as here, our review is limited to the BIA's decision. *Gonzalez v. INS*, 82 F.3d 903, 907 (9th Cir.1996). This Court reviews questions of law de novo. *Aguilera–Cota v. U.S. INS*, 914 F.2d 1375, 1378 (9th Cir.1990). We review factual findings supporting an asylum determination and a decision regarding withholding of deportation under a substantial evidence standard.

*Berroteran–Melendez v. INS*, 955 F.2d 1251, 1255 (9th Cir.1992).

▮ Zhen first asserts that the BIA erred in finding that the immigration judge did not abuse his discretion by denying Zhen's Motion for Change of Venue. An immigration judge may change venue in a deportation case for good cause, upon motion by one of the parties. 8 C.F.R. § 3.20(b) (2001). Good cause is determined by balancing the relevant factors, including administrative convenience, expeditious treatment of the case, location of witnesses, cost of transporting witnesses or evidence to a new location, and factors commonly associated with the alien's place of residence. *See, e.g., Lovell v. INS*, 52 F.3d 458, 460 (2d Cir.1995); *Matter of Rahman*, 20 I & N Dec. 480, 482–83 (BIA 1992).

Zhen argues that because both Fairfield and the relatives who would testify on his asylum application reside in Guam, completion of his application would be very difficult without a change of venue. Zhen's argument is premised on the notion that a change of venue to Guam would include his transfer from the INS detention facility in Phoenix to Guam. However, the immigration judge had no authority to redetermine the conditions of Zhen's custody imposed by the INS. *See* 8 C.F.R. § 3.19(h)(2)(i)(B) (2001). Thus, even had the immigration judge granted Zhen's motion to change venue for the removal proceeding to Guam, Zhen would have remained in physical custody in Arizona unless the INS released Zhen from custody or transferred him to another facility.

The original reason for Zhen's transfer to Phoenix was the lack of a juvenile detention facility on Guam. Accordingly, at the time of Zhen's hearing before the immigration judge, there was little or no chance the INS would have transferred him to Guam. Therefore, a change in venue

to Guam would not have eliminated the difficulties inherent in preparing an asylum application without direct contact between Zhen and his attorney and relatives. The immigration judge therefore did not abuse his discretion in denying Zhen's motion, and the BIA properly dismissed Zhen's appeal of the denial.

Zhen next argues that the BIA erred in affirming the immigration judge's refusal to grant a continuance. Though aliens have no Sixth Amendment right to representation in deportation proceedings, the Fifth Amendment guarantees aliens due process in those proceedings. Furthermore, through various statutes and regulations, aliens are entitled to certain procedural protections, including a guarantee of a reasonable opportunity to present evidence on their own behalf.[1] *See Baires v. INS*, 856 F.2d 89, 91 (9th Cir.1988). Denial of these statutory rights may constitute an abuse of discretion requiring remand. *Id.*

"The decision to grant or deny a continuance is in the sound discretion of the judge and will not be overturned except on a showing of clear abuse." *De la Cruz v. INS*, 951 F.2d 226, 229 (9th Cir.1991). However, we have observed that the judge's discretion is limited; cautioning that " 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay' " can render the alien's statutory rights a mere " 'empty formality.' " *Rios–Berrios v. INS*, 776 F.2d 859, 862 (9th Cir.1985) (citation omitted). "[W]hether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis according to the facts and circumstances of each case." *Baires*, 856 F.2d at 91. In *Baires*, we identified three

factors that courts should take into account when determining whether an immigration judge abused his or her discretion in denying a continuance: (1) the inconvenience to the immigration court; (2) whether the need for a continuance is based on the alien's unreasonable conduct; and (3) the length and number of continuances that were previously granted. *Id.* at 92–93.

■ Under the circumstances of this case, the immigration judge abused his discretion by denying Zhen's request for a continuance, and effectively deprived Zhen of his statutory right to present evidence on his own behalf. Although Fairfield failed to complete Zhen's asylum application by January 22, 1999, as directed by the immigration judge, he was not idle during the period between the December 18, 1998 and January 22, 1999 hearings. In fact, throughout that period, Fairfield worked to secure Zhen's release from custody, contacting numerous INS officials. Fairfield explained to the immigration judge that his failure to prepare the asylum application by the specified date resulted from the difficulty of contacting his client in Phoenix, and that he had therefore been attempting to secure Zhen's release. However, rather than addressing Fairfield's explanation, the immigration judge responded that although his story was very interesting, it bore no relation to the hearing scheduled for that day.

Although the inconvenience to the immigration court is to be considered in addressing a request for a continuance, the judge in this case did not cite inconvenience as a reason for his decision. Furthermore, Zhen had acted reasonably in obtaining counsel, and his counsel acted diligently in attempting to secure Zhen's release or transfer to Guam in order to facilitate the completion of his asylum ap-

---

**1.** The statutory provisions applicable to deportation proceedings also govern hearings on applications for asylum. *Rios–Berrios v. INS,* 776 F.2d 859, 862 (9th Cir.1985).

plication. Finally, despite the difficulties inherent in being represented by an attorney several thousand miles away, Zhen had not requested any previous continuances.[2]

Although we agree that Fairfield should have prepared Zhen's asylum application by the January 22, 1999 hearing, as directed by the immigration judge, or moved for a continuance prior to the hearing, we note that Zhen himself did not act unreasonably. Given Zhen's youth, his reasonable conduct, and his asserted fear of sterilization by the Chinese authorities, we find that it would be fundamentally unfair to order Zhen deported to China as a result of his attorney's error, without first providing him an opportunity to be heard. We further find that the immigration judge's denial of Zhen's request for a continuance deprived Zhen of his statutory right to present evidence on his own behalf.

### III.

After reviewing the facts and circumstances of this case, and considering the three pertinent factors set out in *Baires,* we conclude that the immigration judge abused his discretion when he denied Zhen's motion for a continuance at the January 22, 1999 hearing. Accordingly, this petition for review is GRANTED and the case is REMANDED to the BIA for a decision consistent with this disposition.[3]

---

2. The continuance from November 20 to December 18, 1998 was not granted at Zhen's request, but rather resulted from the failure of the immigration court to contact Fairfield at home as previously arranged.

3. We observe in passing that, as Zhen is no longer a juvenile, upon remand his attorney may seek to have the INS transfer him to a detention facility in Guam and file a renewed motion for change of venue.

